UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21144-Civ-COHN
(02-20572-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

LUIS GONZALEZ-LAUZAN, JR.,         :

     Movant,                       :

v.                                 :          REPORT OF
                                              MAGISTRATE JUDGE
UNITED STATES OF AMERICA,          :

     Respondent.                   :
_____

### Introduction

This matter is before the Court on the movant's motion to vacate, attacking his convictions and sentences for premeditated murder of a government informant and related offenses entered following a jury verdict in case no. 02-20572-Cr-Cohn. The court has reviewed the motion with supporting memorandum, the government's response with exhibits, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

### Claims Raised

The movant raises the following claims:

> 1.  He was denied effective assistance of counsel, where his lawyer failed to object to the court's misstatement of the law and erroneous jury instructions. (Cv-DE#1:5; Cv-DE#2:1).

> 2.  He was denied effective assistance of counsel, where his lawyer failed to object to the introduction of the movant's prior convictions at trial. (C-DE#1:6; Cv-DE#2:9).

3.    He was denied effective assistance of counsel, where his trial counsel failed to argue that the movant's confrontation rights were violated. (Cv-DE#1:8; Cv-DE#2:13).

4.    He was denied effective assistance of counsel, where his lawyer failed to object to the government's unlawful bolstering of a key witness. (Cv-DE#1:9).

## Procedural History

The movant's convictions arise from the premeditated murder of a government informant, in retaliation for the informant's assistance in the investigation of "straw man"[1] gun purchases by the movant's father.

On July 11, 2002, the movant was charged by Indictment with conspiracy to murder a witness, in violation of 1 U.S.C. §371 (Count 1), murder in retaliation against an informant, in violation of 18 U.S.C. §1513(a)(1)(B) and 18 U.S.C. §2 (Count 2), murder in retaliation against a witness, in violation of 18 U.S.C. §1512(a)(1)(A), 18 U.S.C. §1111, and 18 U.S.C. §2 (Count 3), obstruction of justice, in violation of 18 U.S.C. §1512(b)(2)(B) and 18 U.S.C. §2 (Count 4), using and carrying a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and (B)(ii), 18 U.S.C. §924(j), 18 U.S.C. §1111, and 18 U.S.C. §2 (Count 5), unauthorized transfer of unregistered firearm silencer, in violation of 26 U.S.C. §5861(e) (Count 6), and two counts of possession of ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1) (Counts 7 and 8). (Cr-DE#1). On June 19, 2003, the government filed a notice of

---

[1]A "straw-man" purchase occurs when a person who cannot legally purchase a firearm arranges for a person who can to purchase it on their behalf. (Cr-DE#259:49-50). Texidor could not legally purchase a firearm because he was a convicted felon. (Cr-DE#259:51).

2

its intent to seek the death penalty. (Cr-DE#143).

Prior to trial, the movant filed a motion to suppress statements made during a custodial interrogation. (Cr-DE#80). The movant maintained that his right to counsel was violated on two separate occasions. (Id.). Following an evidentiary hearing, a Report was entered recommending that the pre-warning statements be suppressed, but denying the suppression the post-warning statements. (Cr-DE#133). On July 3, 2003, the district court adopted the Report, suppressing the pre-warning statement, and denying suppression of the post-warning statements. (Cr-DE#150).

The movant eventually proceeded to trial, where he was acquitted a to Count 3, and convicted of all remaining charges, following a jury verdict. (Cr-DE#218). On January 29, 2004, the jury, by special verdict, refused to impose the death penalty, and found the movant should be sentenced to a term of life imprisonment without the possibility of release. (Cr-DE#236).

On May 14, 2004, the movant was sentenced to a total term of life imprisonment, consisting of two concurrent terms of life imprisonment as to Counts 2 and 5, four terms of 120 months imprisonment as to Counts 4, 6, 7, and 8, and 60 months in prison as to Count 1. (Cr-DE#254). All counts were ordered to run concurrently with each other. (Id.).

The movant appealed, raising the sole claim[2] that the court erred in denying the movant's pretrial motion to suppress. On January 30, 2006, the Eleventh Circuit affirmed the movant's conviction in a published opinion. United States v. Gonzalez-

---

[2] The claims are gleaned from the published appellate opinion (Cr-DE#272), and from the movant's brief on appeal which can be found on Westlaw, a legal research database, at United States v. Gonzalez-Lauzan, 2004 WL 4986357 (11th Cir. 2004).

Lauzan, 437 F.3d 1128 (11th Cir. 2006); (Cr-DE#272). Rehearing and rehearing *en banc* were denied on April 6, 2006. United States v. Gonzalez-Lauzan, 179 Fed.Appx. 685 (11th Cir. 2006). Certiorari review was denied on October 2, 2006. Gonzalez-Lauzan v. United States, ___ U.S. ___, 127 S.Ct. 146 (2006). This motion to vacate was timely filed less than one year later on April 27, 2007.[3] (Cv-DE#1).


                        Discussion of the Claims


     In this collateral proceeding, the movant raises multiple claims which challenge counsel's effectiveness. In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).


     Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is

---

     [3]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. <u>See</u> <u>United States v. Robinson</u>, 64 F.3d 403, 405 (8 Cir. 1995), <u>Ferguson v. United States</u>, 699 F.2d 1071 (11 Cir. 1983), <u>United States v. Ammirato</u>, 670 F.2d 552 (5 Cir. 1982); <u>United States v. Sanderson</u>, 595 F.2d 1021 (5 Cir. 1979).

In **claim one**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the court's misstatement of the law and erroneous jury instruction. (Cv-DE#1:5; Cv-DE#2:1). According to the movant, during the penalty phase of the criminal proceeding, the court improperly instructed the jury that the only sentencing options were a death sentence or life imprisonment as to the movant's conviction in Count 5, for using and carrying a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and (B)(ii), 18 U.S.C. §924(j), 18 U.S.C. §1111, and 18 U.S.C. §2.

Title 18 U.S.C. §924(j)(1) provides that "[A] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall-- ... if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life." Murder is defined as the unlawful killing of a human being with malice aforethought. 18 U.S.C. §1111. To be convicted of aiding and abetting a murder in

violation of section §924(j)(1), a defendant must have first violated section 924(c)(1) by using or carrying a firearm during and in relation to a crime of violence. See United States v. Nguyen, 155 F.3d 1219, 1226 (10th Cir. 1999).

The movant complains that during the penalty phase, the jury was only instructed as to his conviction in Count 2, for murder in retaliation against an informant, in violation of 18 U.S.C. §1513(a)(1)(B), that he could either be sentenced to death or life imprisonment. The penalty provision for violation of §1513 in the case of a killing is the same as that contained in §1111. See 18 U.S.C. §1513(a)(2)(A). The movant claims that the jury should have been instructed as to Count 5 that they could alternatively impose any term of years or life in prison. In this case, the movant faced death. The jury, however, rejected the death penalty and recommended life imprisonment without the possibility of release. The validity of the court's instruction as to Count 5 is of no import because the movant faced death or life in prison as to Count 2. Under these circumstances, the movant cannot establish prejudice arising from counsel's failure to argue that the instructions unlawfully suggested that as to Count 5 there were only two viable sentencing options, life in prison or death.

Moreover, prior to imposing sentence on the offenses of conviction, the court considered the movant's applicable U.S. Sentencing Guidelines as reflected in the probation officer's PSI. The movant's PSI established a base offense level 45, with a criminal history category I, which resulted in a guideline term of life in prison. It should be noted that the highest level under the U.S. Guidelines is a base offense level 43 which carries a guideline sentence of life in prison, regardless of the criminal history. The movant's base offense level was two levels above the highest guideline range available under the Guidelines. Again, any

6

error as to the jury instructions in Count 5 were of no import because the court sentenced the movant to life in prison based on the movant's guidelines range. Thus, no prejudice has been established arising from counsel's failure to pursue this nonmeritorious claim.

Under the circumstances present here, the movant has thus failed to establish that had the proper instruction been given as to Count 5, the jury would have imposed a sentence other than life. Under these circumstances, he cannot satisfy the prejudice prong of Strickland arising from counsel's failure to pursue this issue either at any stage of the criminal proceeding. He is thus entitled to no relief on the claim.

In **claim two**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the introduction of the movant's prior conviction at trial and for failing to object to the court's instructions in this regard on the basis that it removed the burden of proof as to Counts 7 and 8 from the government. (C-DE#1:6; Cv-DE#2:9-10). Alternatively, the movant asserts that the introduction of his prior conviction, one of which involved the possession of a silencer, was unduly prejudicial and violated the dictates of Apprendi v. New Jersey, 530 U.S. 466 (2000).

As will be recalled, the movant was charged by Indictment with two counts of possession of ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1) (Counts 7 and 8). (Cr-DE#1). Title 18 U.S.C. §922 provides in relevant part that "[i]t shall be unlawful for any person - (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." See 18 U.S.C. §922(g)(1).

To establish a violation of §922(g)(1), the government must therefore prove three elements beyond a reasonable doubt:

> (1) that the defendant was convicted of a crime punishable by imprisonment for a term exceeding one year;
>
> (2) that the defendant knowingly possessed a firearm or ammunition; and
>
> (3) that such firearm or ammunition ... was in or affected interstate commerce.

See United States v. Funches, 135 F.3d 1405, 1406-07 (11th Cir. 1998). The government may prove possession by showing that the defendant actually possessed the firearm/ammunition or by showing that he constructively possessed the firearm. United States v. Gonzalez, 71 F.3d 819, 834 (11th Cir. 1996). To establish constructive possession, however, the government must show that the defendant had both the intent and the power to exercise dominion and control over the firearm/ammunition, and that the defendant knew of its existence in order to exercise dominion and control over it. United States v. Pedro, 999 F.2d 497, 500 (11th Cir. 1993).

In this case, the evidence adduced at trial reveals as follows. In January, 2002, Alexander Texidor was arrested by federal authorities for purchasing firearms in what is commonly called a "straw-man" scheme. (Cr-DE#259:50-51). Following his arrest, Texidor agreed to cooperate with federal law enforcement officials, which resulted in the indictment of Luis Gonzalez-Lauzan, Sr. r-DE#259:51-57).

After learning that Texidor had informed on his father, the movant contacted Jose Ramon Hernandez, a friend of Texidor's, in order to ascertain Texidor's residence. (Cr-DE#259:157). Hernandez testified that the movant was upset and wanted to kill Texidor for informing on his father. (Cr-DE#259:148-50,157-58; Cr-DE#260:242-44). Eventually, Hernandez accompanied the movant to Texidor's apartment building. (Cr-DE#259:159-62).

Thereafter, the movant recruited and James Wiggins agreed to shoot Texidor, in exchange for the movant waiving a substantial debt Wiggins owed the movant. (Cr-DE#261:392-93,397-98,434,466). The night before the shooting, the movant drove Wiggins to Texidor's apartment building. (Cr-DE#261:400-03; Cr-DE#262:563-64). On January 28, 2002, the day Texidor was killed, the movant went to Wiggins' home, and told Wiggins that he had placed a firearm, a silencer, and a loaded magazine inside Wiggins' vehicle. (Cr-DE#261:404-05). Wiggins looked in his vehicle and found a paper bag containing the firearm, silencer, and loaded magazine. (Cr-DE#261:404-05).

The movant and Wiggins surveilled Texidor's building until the victim Texidor arrived. (Cr-DE#261:411). The movant then communicated with Wiggins by cellular phone which the movant provided, at which time he advised Wiggins to shoot Texidor in the head and take the victim's gold chain. (Cr-DE#261:416-21,468). Wiggins then walked up to Texidor, told him to run, and then shot six rounds into Texidor until he fell to the ground, dying as a result of the gunshot wounds. (Cr-DE#261:421-22; Cr-DE#259:81,132).

Thereafter, the movant met with Wiggins at which time he gave Wiggins an eyeglass case containing $300.00. (Cr-DE#261:422). Wiggins returned to Georgia, and kept the firearm and silencer used in the shooting. (Cr-DE#261:423-24). Although the movant and his

father instructed Wiggins to destroy the firearm, Wiggins did not do so, and the firearm and silencer was thereafter seized by the government after execution of a search warrant at Wiggins' Georgia apartment. (Cr-DE#261:426-27; Cr-DE#260:291-96). The government then executed a search warrant at the movant's residence, seizing numerous rounds of ammunition and machinery of the type that could be used to illegally manufacture silencers, as well as, a handbook on silencers. (Cr-DE#262:613-18).

After being advised of and waiving his rights, the movant confessed to orchestrating Texidor's murder. He stated that he recruited Wiggins, provided him with a pistol and silencer, but only and instructed Wiggins only to scare Texidor. (Cr-DE#262:673). The movant further confirmed paying Texidor and later instructing him to destroy the pistol. (Id.). According to the movant, he did not intend to have Texidor killed, but rather merely wanted Wiggins to teach Texidor a lesson by scaring, hurting, or robbing him. (Cr-DE#262:711-12).

At trial, the government introduced a certified copy of the movant's prior indictment and conviction for possession of an unregistered silencer entered in United States District Court, Southern District of Florida, case no. 97-619-Cr-Lenard. (Cr-DE#259:59-60). The court instructed the jury that in order to find that the movant was guilty of possessing ammunition, the jury had to first find that prior to its possession, the movant had previously been convicted of a felony punishable by more than one year in prison. (Cr-DE#211:31). That instruction was proper. See United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004) (Violation of §922(g) requires in pertinent part proof that the defendant had previously been convicted of a felony offense.). In this case, the court did not err in allowing the government to introduce a certified copy of the movant's prior felony conviction

10

to establish that the movant was a convicted felon. Moreover, the court's instruction as to these offenses was proper, and should not be disturbed here. Under these circumstances, no prejudice has been established arising from counsel's alleged deficient performance.

The movant also appears to argue in the alternative that counsel should have objected to the introduction of the prior conviction on the basis that the nature of the prior conviction was highly prejudicial because it also dealt with a silencer. Even if counsel had objected to the admission of the nature of the conviction pursuant to Fed.R.Evid. 404(b), no showing has been made in this collateral proceeding that the objection would have been sustained. Federal courts have long recognized the important evidentiary principle that evidence of other crimes, wrongs, or acts is not admissible to prove bad character. Britton v. Rogers, 631 F.2d 572 (8 Cir. 1980), cert. denied 451 U.S. 939 (1981). They do, however, admit "other crimes" evidence when offered for appropriate purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. Hall v. Wainwright, 733 F.2d 766 (11 Cir. 1984); Britton v. Rogers, supra at 575.

As will be recalled, the evidence adduced at trial included the testimony of James Wiggins, who stated that he shot the victim with a silenced firearm. The silencer was recovered from Wiggins' apartment in Georgia, together with the firearm, which was later verified as the murder weapon. Wiggins testified that he got the firearm and silencer from the movant. After Wiggins' arrest, he began cooperating with agents, and during recorded conversations with the movant, Wiggins advised the movant that he was still in possession of the home made silencer. Moreover, firearms expert testified that the equipment seized from the movant's home pursuant to the execution of a search was consistent with and could be used to manufacture silencers. The movant's prior conviction for

possession of a silencer was further evidence of his ability to commit the offense here because he had the knowledge and intent to possess such devices. Thus, the prior conviction was admissible for the following reasons: (1) to prove one of the elements of the felon in possession of a firearm and ammunitions as charged in Counts 7 and 8; (2) to establish the movant's ability to participate in the offense as charged in Count 6, possession of an unregistered firearm silencer; and (3) to corroborate testimony that the movant participated in the homicide offenses as charged in the Indictment.

Given the more than ample evidence adduced at trial to support the movant's convictions, the admission of the prior conviction was not prejudicial. The court's instruction to the jury on the possession of ammunition by a convicted felon was not error. Under these circumstances, counsel was not ineffective for failing to pursue this claim at trial or on appeal.

The movant also appears to argue that counsel should have objected to the court's instruction to the jury which concluded that the prior conviction was a felony. (Cv-DE#2:9). According to the movant, the jury and not the judge should have made the finding that the prior conviction was, in fact, a felony conviction. The movant maintains that the judge's determination in this regard violates Apprendi v. New Jersey, 530 U.S. 466 (2000).

Claims of Apprendi error cannot be raised for the first time in a motion to vacate. The Eleventh Circuit has held that Apprendi does not apply retroactively on collateral review. See, McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001). The court reasoned that claims raised under Apprendi in an initial §2255 motion are not jurisdictional, but barred under the non-retroactivity standard of Teague v. Lane, 489 U.S. 288 (1989), and that if a movant fails

to raise his Apprendi claims on direct appeal, he will be procedurally barred from raising them in an initial §2255 motion. Id. The Court has since held that "the effect of McCoy's holding that Apprendi is not retroactively applicable to cases on collateral review--or more accurately, that Apprendi is not applicable to cases in which the conviction had become final before that decision was released--is to bar all Apprendi claims in such cases whether or not they are meritorious." Hamm v. United States, 269 F.3d 1247 (11th Cir. 2001).

Although Apprendi had been decided at the time of the movant's sentencing, the law in the Eleventh Circuit was that Apprendi did not apply to judge-made determinations pursuant to the Sentencing Guidelines. See, e.g., United States v. Nealy, 232 F.3d 825, 829 n. 3 (11th Cir. 2000)("The Sentencing Guidelines are not subject to the Apprendi rule."); United States v. Harris, 244 F.3d 828, 829-30 (11 Cir. 2001)(holding that Apprendi does not apply to the relevant conduct provision of the Sentencing Guidelines); see also United States v. Diaz, 248 F.3d 1065, 1105 (11th Cir. 2001)(noting that "Sentencing Guideline issues are not subject to the Apprendi rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt"). Those decisions also explicitly exempted the fact of prior convictions from those facts that increase a sentence that must be found by a jury or admitted by the defendant. Apprendi, 530 U.S. at 490.

Moreover, the Eleventh Circuit has since held that the government need not allege in its indictment nor prove beyond a reasonable doubt that a defendant had prior convictions in order to use those convictions for purposes of enhancing a defendant's sentence. See United States v. Camacho-Ibarquen, 404 F.3d 1283, 1290 (11th Cir. 2005), citing, Almendarez-Torres v. United States, 523 U.S. 224 (1998); United States v. Shelton, 400 F.3d 1325, 1329

(11th Cir. 2005)(same); <u>United States v. McGowan</u>, 134 Fed.Appx. 361 (11th Cir. 2005)(same).

Even if counsel had argued that the jury and not the judge should have determined whether the movant's prior conviction was a felony conviction, the movant is still entitled to no relief on this basis. The determination of whether the movant's prior conviction for possession of silencers was a felony for purposes of 18 U.S.C. §924(g) did not depend on the probative value of the evidence, but rather depended on the interpretation of the statute. <u>See</u> <u>cf</u>., <u>United States v. Vidaure</u>, 861 F.2d 1337, 1340 (5th Cir. 1988), <u>cert. den'd</u>, 489 U.S. 1088 (1989). In <u>Vidaure</u>, the Fifth Circuit explained that such an interpretation is a question of law for the court and not the jury to decide. <u>Id</u>. In this case, whether the movant's prior conviction was a felony is a matter of statutory interpretation and was thus correctly decided by the court as a matter of law. <u>United States v. Vidaure</u>, <u>supra</u>. Therefore, the court's instruction and determination in this case was proper. Under these circumstances, the movant has failed to establish either deficient performance or prejudice arising from counsel's failure to pursue this issue.

The movant also relies on the Supreme Court's decision in <u>Old Chief v. United States</u>, 519 U.S. 172 (1997) in support of his alternative argument that counsel should have offered to stipulate to the prior conviction. He claims that he suffered unfair prejudice because counsel failed to seek such a stipulation, thereby allowing the government to provide the jury with the nature of his prior conviction which he maintains could have been used by the jury to reach the verdict in this case. In <u>Old Chief</u>, the Supreme Court determined that a district court abuses its discretion when it rejects the parties' stipulation that a defendant was a convicted felon "when the purpose of the evidence

14

is solely to prove the element of prior conviction." <u>Old Chief</u>, 519 U.S. at 174. In this case, the movant provides no evidence that the government would have been amenable or otherwise agreed to such a stipulation. Thus, the movant cannot establish prejudice arising from counsel's failure to seek a pretrial stipulation regarding the movant's prior conviction.

Finally, the movant further asserts that his conviction as to Count 5 is duplicitous, and maintains that trial and appellate counsel were ineffective for failing to pursue the claim. According to the movant, Count Five of the Indictment alleged two separate offenses, the murder and using a firearm during and in relation to a crime of violence.

A duplicitous indictment charges two or more separate and distinct crimes in a single count. <u>See</u>, <u>United States v. Burton</u>, 871 F.2d 1566, 1573 (11 Cir. 1989). This claim fails on the merits because the Indictment did not charge two or more offenses as a single count. Count Five of the Indictment charged the movant with knowingly using and carrying a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and (B)(ii), 18 U.S.C. §924(j), and 18 U.S.C. §2.[4]

As previously discussed in this Report, the Indictment set forth the elements required to prove the firearm possession. In order for the jury to convict the movant of violation §924(j), it must determine that the movant first violated section 924(c)(1) by using or carrying a firearm during and in relation to a crime of violence. <u>See</u> <u>United States v. Nguyen</u>, 155 F.3d 1219, 1226 (10th Cir. 1999). Section 924(j) provides an enhanced penalty when the

---

[4]This is the aiding and abetting statute.

possession of the firearm results in a death. In this case, the evidence established that the movant provided Wiggins with the firearm that was used to kill the government informant. The Indictment was not duplicitous, and therefore no deficient performance or prejudice has been established arising from counsel's failure to challenge the indictment on that basis. The movant is thus entitled to no relief on this claim.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his trial counsel failed to argue that the right to confront witnesses was violated, citing Crawford v. Washington, 541 U.S. 36 (2004).[5] (Cv-DE#1:8; Cv-DE#2:13). According to the movant, the government introduced incriminating statements by non-testifying and unavailable witnesses. (Id.).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay is inadmissible unless the statement is not hearsay as provided by Fed.R.Evid. 801(d), or falls into one of the hearsay exceptions enumerated in Rules 803, 804, and 807 of the Federal Rules of Evidence. Moreover, if hearsay is "testimonial," that is, for example, "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford v. Washington, 541

---

[5]In Crawford, the Supreme Court held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is ... confrontation." 541 U.S. at 68-69. This holding abrogated Ohio v. Roberts, 448 U.S. 56 (1980), which had allowed the admission of an unavailable witness' statement against a criminal defendant if the statement bore adequate indicia of reliability, a test met when the evidence either fell within a firmly rooted hearsay exception or bore particularized guarantees of trustworthiness. Crawford, 541 U.S. at 68-69. In Crawford, the Supreme Court established a rule that, "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.

U.S. 36, 52 (2004). The Confrontation Clause[6] prohibits its admission at trial unless (1) the declarant is unavailable, and (2) the defendant has had a prior opportunity to cross-examine the declarant. See Crawford, supra at 59, 68.

While the Supreme Court has not clarified which statements are in fact "testimonial," it has provided some guidance on the term's meaning. It defined "testimony" as "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Id. at 51 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). Thus, "formal statement[s] to government officers" are generally testimonial. Crawford, 541 U.S. at 51. So is "ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." Id. Similarly, "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," fall within the "core class" of testimony. Id.

Admission of non-testimonial hearsay against criminal defendants is not governed by Crawford, but still violates the Confrontation Clause unless the statement falls within a firmly rooted hearsay exception, or otherwise carries a particularized guarantee of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66

---

[6]The Confrontation Clause provides that "[I]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

(1980).[7] A hearsay exception is firmly rooted if, "in light of longstanding judicial and legislative experience [the exception] rests on such a solid foundation that admission of virtually any evidence within it comports with the substance of the constitutional protection." <u>Lilly v. Virginia</u>, 527 U.S. 116, 126 (1999).

First, the movant claims that the introduction of a February 11, 2002 newspaper article violated his confrontation rights because the article summarized information concerning the shooting death of the informant which was gleaned from a source which the movant was unable to cross-examine. (Cv-DE#2:11-13). He maintains that the introduction of the article constituted double hearsay because the reporter was recounting information received from others, and therefore, is suspect under the Confrontation Clause of the U.S. Constitution. (Cv-DE#2:14).

The government appears to have introduced the newspaper article during the testimony of cooperating witness James Wiggins (Cr-DE#261:433), not to prove the truth of the matter asserted, but rather to establish that Wiggins had knowledge of and a connection to the informant's murder prior to the time when law enforcement questioned him about his possession of the firearm and silencer. Such an admission is proper. <u>See</u> <u>cf</u>., <u>United States v. Michtavi</u>, 155 Fed.Appx. 433 (11th Cir. 2005) (Newspaper articles were not inadmissible hearsay where the Government did not offer them to prove the truth of the matter asserted therein, the occurrence of

---

[7] <u>Crawford</u> does supercede <u>Roberts</u> insofar as testimonial hearsay is concerned as the Roberts formulation remains applicable to non-testimonial statements. <u>See</u> <u>United States v. Franklin</u>, 415 F.3d 537, 546 (6th Cir. 2005)(explaining that with respect to non-testimonial statements, the <u>Roberts</u> formulation remains the controlling precedent, under which non-testimonial statements are constitutionally admissible if they "bear independent guarantees of trustworthiness"); <u>United States v. Saget</u>, 377 F.3d 223, 227 (2d Cir. 2004)(stating that "Crawford leaves the Roberts approach untouched with respect to non-testimonial statements").

a drug bust, but rather to show that newspaper articles reporting a drug bust existed, and thereby rehabilitate a witness' testimony.).

Notwithstanding, even if the article was discussing the informant's homicide is considered a summary of what witnesses reported and constituted double hearsay forbidden by Fed.R.Evid. 805, the movant is still entitled to no relief given the overwhelming evidence adduced at trial implicating him the offenses of conviction. The Eleventh Circuit has held that "erroneous admission of evidence does not warrant reversal if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003) (quotations omitted) (noting also that error is harmless "where there is overwhelming evidence of guilt."). As previously discussed in this Report, even if there was error, the error had no influence on the outcome, and there was overwhelming evidence adduced at trial that was unaffected by any such alleged error upon which the jury could have relief upon in reaching its verdict. Under these circumstances, the movant cannot establish prejudice arising from counsel's failure to pursue this claim.

The movant next asserts that the government violated his confrontation rights by presenting the testimony of Detective Albert Nabut concerning information he gathered during the course of his investigation. (Cv-DE#2:13). The movant concedes that counsel objected to some of the testimony on hearsay grounds, but claims counsel should have also objected on the alternative basis that the testimony violated the movant's confrontation rights. (Id.). According to the movant, Nabut testified regarding Wiggins contact with the movant, and the movant's suggestion that Wiggins pay off a debt for a drug deal gone bad by doing another job, but

claims Nabut never identified the source of this information, and thus its admission violates the movant's confrontation rights. (<u>Id</u>. at 15-16).

In this case, Nabut's testimony was in fact cumulative to that of cooperating witness Wiggins and Hernandez who testified in detail regarding the movant's involvement in the homicide of Texidor. Even if Nabut's testimony did violate the movant's confrontation rights, the movant is still entitled to no relief on the claim because he cannot demonstrate that the admission of this testimony had a substantial influence on the jury's decision to convict. Under these circumstances, the movant has failed to establish prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) arising from counsel's failure to pursue this claim.

In **claim four**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the government's unlawful bolstering and/or vouching for the credibility of cooperating witness Wiggins. (Cv-DE#1:9). According to the movant, the government called Officer Nabut to testify that Wiggins initially may have provided some inconsistent statements, but that this was not an uncommon practice for suspects to do when confronted by police.[8] (<u>Id</u>. at 19-20). The movant claims this testimony was unlawful as it bolstered Wiggins' credibility.

Review of the record reveals that Detective Nabut testified regarding his encounter with Wiggins in Georgia in connection with

---

[8]Nabut summarized information provided to him by codefendants James Wiggins and Ramon Hernandez, both of whom testified as government witnesses and were subject to extensive cross-examination by defense counsel. To the extent the movant means to argue that Nabut's information was derived from other sources, he fails to identify who those sources are. It appears that Nabut's testimony was offered to establish the context and circumstances of movant's post-arrest confession.

the execution of the search warrant at Wiggins' residence and his subsequent interview. (Cr-DE#262:674). During that interview, Wiggins first claimed that he was at the scene of the shooting only as a look-out, and that he had fallen asleep at the time shots were fired. After further questioning, Wiggins then explained the extent of his involvement in the homicide. Defense counsel was able to recall Wiggins as a witness in order to impeach his credibility with the inconsistent statements. Nothing in the record, however, suggests that Officer Nabut was vouching for the truthfulness of Wiggins' testimony.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied, 485 U.S. 964 (1988).

The Eleventh Circuit has held in the context of federal criminal prosecutions that prosecutorial conduct requires a new trial only if the remarks 1) were improper and 2) prejudiced the defendant's substantive rights. United States v. Cannon, 41 F.3d 1462, 1466 (11 Cir. 1995); United States v. Cole, 755 F.2d 748, 767 (11 Cir. 1985). The remarks must be reviewed in context and the probable impact upon the jury must be assessed. United States v. Cannon, supra at 1469; United States v. Stefan, 784 F.2d 1093, 1100

(11 Cir. 1986). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998) (citation omitted). When the record contains sufficient independent evidence of guilt, any error is harmless. United States v. Adams, 74 F.3d 1093, 1097-98 (11th Cir. 1996).

In this case, there is nothing to suggest that the trial was compromised or that the prosecutor engaged in any unlawful misconduct. There was ample evidence implicating the movant in the offenses of conviction. Since the jury had more than sufficient evidence of the movant's guilt, it is clear that Nabut's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619 (1993). To the contrary, Nabut's testimony was neither unlawful nor did it have a substantial and injurious effect on the jury. Thus it is clear that the fundamental fairness of the movant's trial was not affected. See Donnelly v. DeChristoforo, supra; Hall v. Wainwright, supra. Counsel was not ineffective for failing to pursue this nonmeritorious claim. Under these circumstances, the movant is entitled to no relief on this claim.

Moreover, the jury was instructed about weighing the credibility of witnesses. (Cr-DE#211:6-7). The jury was also given a cautionary instruction regarding what weight to give to statements made by the movant to the officer after being arrested or detained. (Cr-DE#211:10). The jury, however, tacitly rejected the movant's defense when it returned a guilty verdict. Consequently, based on the record before this court, the movant has failed to establish prejudice stemming from counsel's alleged deficient performance, pursuant to Strickland v. Washington, 466 U.S. 668 (1984), and is therefore entitled to no relief on this

claim.

Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 9th day of October, 2007.

UNITED STATES MAGISTRATE JUDGE

cc:  Luis Gonzalez-Lauzan, Jr., Pro Se
     Reg. No. 50404-004
     U.S.P.
     P.O. Box 305
     Jonesville, VA 24263

     Frank H. Tamen, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132